Eric P. Mathisen, IN State Bar No. 19475-71 (Pro Hac Vice)
eric.mathisen@ogletreedeakins.com
Christopher M. Ahearn, Cal. Bar No. 239089
chris.ahearn@ogletreedeakins.com,
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA  94105
Telephone:     415.442.4810
Facsimile:      415.442.4870

Attorneys for Defendants
SABIC INNOVATIVE PLASTICS SALARY CONTINUANCE
PLAN and SABIC INNOVATIVE PLASTICS, INC.

Jason Wolford, State Bar No. 194177
Jason@wolfordlegal.com
WOLFORD LAW FIRM
101 Tunstead Avenue
San Anselmo, CA 94960
T: 415-429-5529
F:  748524-4853

Attorney for Plaintiff
LAURIE COUTO

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (SAN JOSE DIVISION)

| | |
|---|---|
| LAURIE COUTO,<br><br>        Plaintiff,<br><br>    v.<br><br>SABIC INNOVATIVE PLASTICS SALARY CONTINUANCE PLAN, SABIC INNOVATIVE PLASTICS, INC., and DOES ONE through TEN, inclusive<br><br>        Defendants. | Case No. CV12-00633-RMW<br><br>**STIPULATION AND []<br>ORDER REGARDING NON-<br>BINDING MEDIATION AND<br>ARBITRATION, STAY OF<br>PROCEEDINGS, AND CASE<br>SCHEDULE**<br><br>Complaint Filed:  February 9, 2012<br>Trial Date:        April 21, 2014 |

Plaintiff Laurie Couto ("Plaintiff") and Defendants SABIC Innovative Plastics Salary Continuance Plan and SABIC Innovative Plastics US LLC (erroneously sued as "SABIC Innovative Plastics, Inc.") (collectively "Defendants"), (the "Parties") through their undersigned counsel, hereby stipulate as follows:

1.      It is Defendants' position that Plaintiff Laurie Couto agreed to submit her claims asserted in her Second through Seventh Causes of Action in her First Amended Complaint Mediation and Arbitration, pursuant to the documents attached as <u>Exhibits A and B</u> (signed agreement, and applicable "RESOLVE" policy, respectively).  Plaintiff disputes that she agreed to the RESOLVE policy as claimed by Defendants.  However, the parties stipulate to participate in a non-binding mediation and non-binding arbitration to avoid further dispute and possible delay regarding the arbitration issue.

2.      The Parties agree to a non-binding mediation and non-binding arbitration pursuant to the terms of the RESOLVE policy attached as <u>Exhibit B</u> , which shall govern mediation and arbitration in this action to the extent that such policy does not conflict with this Agreement, in the event of a conflict the terms of this Agreement shall govern.

3.      The Parties agree that Plaintiff should be considered a "current employee" under the RESOLVE Policy, such that any mediation or arbitration of her claims will be non-binding.

4.      The Parties agree that they shall complete the mediation and arbitration hearing process pursuant to the RESOLVE policy not later than November 2013 (however, pursuant to the RESOLVE policy, additional time may be required for the arbitrator to issue his or her decision). The Parties further agree that the discovery limitations set by the Court in its April 12, 2013 order shall apply in any arbitration pursuant to the RESOLVE policy.

5.      The Parties are presently scheduled to conduct a mediation before mediator Koorosh Afshari, Esq. (http://www.adrsg.com/) on July 24, 2013.  The Parties had been unable to schedule a mediation prior to the previously set July 11, 2013 mediation deadline, and the July 24 date works better for the Parties and their counsel.

6.      The Parties agree that although the RESOLVE Policy excludes the claims in Plaintiff's First Cause of Action (Benefits Pursuant to ERISA) on its face, this claim is closely

STIPULATION AND [] ORDER REGARDING NON-BINDING MEDIATION
AND ARBITRATION, STAY OF PROCEEDINGS, AND CASE SCHEDULE

related enough to Plaintiffs' other claims that it should be subject to non-binding mediation and non-binding arbitration as well.

7.     The Parties agree that this action should be stayed pending the outcome of such mediation and arbitration, though the Court may retain jurisdiction over this case to enforce the RESOLVE Policy, or as justice may otherwise require.

8.     The Parties agree that the Court should hold a further case management conference in December 2013.

9.     The Parties agree that a trial date should remain on calendar for this case, but that it should be continued approximately 30 days, so that non-binding arbitration may be concluded in advance of any pre-trial deadlines in this action (such as the deadline to issue discovery on December 13, 2013 – at least 30 days prior to the January 17, 2014 cutoff).

10.     The Parties agree that the pre-trial schedule should be amended as follows:

Case Management Conference set for December 6, 2013 at 32 30 a.m.

Jury Trial set for May 19, 2016 at 1:30 p.m.

Pretrial conference set for May 1, 2016 at 2:00 p.m.

Joint Pretrial Statement due April 24, 2016

Hearing on Dispositive Motions set for March 14, 2014 at 9:00 a.m.

Expert Discovery Cutoff March 14, 2014

Fact Discovery Cutoff February 14, 2014

Disclosure of Experts by February 14, 2014

///

///

///

///

///

///

///

///

2

STIPULATION AND [] ORDER REGARDING NON-BINDING MEDIATION
AND ARBITRATION, STAY OF PROCEEDINGS, AND CASE SCHEDULE

11.     The Parties agree that Defendants should not be required to file any motions pursuant to Federal Rule 12(c), or any motion to compel mediation or arbitration, by June 11, 2013. Defendants may file a Rule 12(c) motion pursuant to the dispositive motion deadline set forth in paragraph 8 above.

**IT IS SO STIPULATED**


DATED:  June 10, 2013                          OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:     /s/ *Christopher M. Ahearn*
                Eric P. Mathisen
                Christopher M. Ahearn

Attorneys for Defendant
SABIC INNOVATIVE PLASTICS SALARY CONTINUANCE PLAN


DATED: June 10, 2013                           WOLFORD LAW FIRM


By:     /s/ *Jason Wolford*
                Jason Wolford

Attorneys for Plaintiff
LAURIE COUTO

STIPULATION AND [] ORDER REGARDING NON-BINDING MEDIATION
AND ARBITRATION, STAY OF PROCEEDINGS, AND CASE SCHEDULE

1

**[] ORDER**

2          Good cause appearing, it is hereby ordered that:

3      The case schedule is amended as follows:

4          Case Management Conference set for December 6, 2013 at 32:30 c.m.

5          Jury Trial set for May 19, 2016 at 1:30 p.m.

6          Pretrial conference set for May 1, 2016 at 2:00 p.m.

7          Joint Pretrial Statement due April 24, 2016

8          Hearing on Dispositive Motions set for March 14, 2014 at 9:00 a.m.

9          Expert Discovery Cutoff March 14, 2014

10         Fact Discovery Cutoff February 14, 2014

11         Disclosure of Experts by February 14, 2014

12     Defendants shall not be required to file any motions pursuant to Federal Rule 12(c), or any

13  motion to compel mediation or arbitration, by June 11, 2013.  Defendants may file a Rule 12(c)

14  motion pursuant to the dispositive motion deadline set forth above.

15     This action is stayed until December 6, 2013 at 32:30c.m., pending the outcome of non-

16  binding mediation and non-binding arbitration pursuant to the stipulation of the parties  and the

17  mediation and arbitration agreement established pursuant to Exhibits A and B attached hereto.  The

18  Court shall retain jurisdiction over this case to enforce such agreement, and as justice may

19  otherwise require.

20

21  **IT IS SO ORDERED.**

22

23  Dated:_____

24                                                Ronald M. Whyte
                                                  United States District Judge
25

26

27

28

STIPULATION AND [] ORDER REGARDING NON-BINDING MEDIATION
AND ARBITRATION, STAY OF PROCEEDINGS, AND CASE SCHEDULE

1

## **SIGNATURE ATTESTATION**

2          In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this

3 document has been obtained from Jason Wolford.

4

5 Dated: _____June 10, 2013_____                    _____/s/ Christopher M. Ahearn_____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND [] ORDER REGARDING NON-BINDING MEDIATION
AND ARBITRATION, STAY OF PROCEEDINGS, AND CASE SCHEDULE

*Laurie Couto v. SABIC Innovative Plastics Salary Continuance Plan, et al.*

12-CV00633

Stipulation and [Propose] Order Regarding Non-Binding Mediation and Arbitration, Stay of Proceedings, and Case Schedule

**<u>EXHIBIT A</u>**

## ACKNOWLEDGEMENT
## CONDITIONS OF EMPLOYMENT

**Instructions:** Please read the contents of this **ACKNOWLEDGEMENT** and the documents it references carefully. Your continued employment is contingent upon your acceptance of the conditions of employment described below. If you accept those conditions, please sign in the space provided at the bottom of this form, and return it with the other required documents in the envelope provided by January 26, 2001.

1.  I acknowledge that my continued employment is contingent upon meeting all employment requirements, including but not limited to the following:

    - proof of legal authorization to work in the United States, and in that regard upon reporting to work I will produce certain documents as provided in the attached "List of Acceptable Documents" which establish my identity and work eligibility

    - my review of the enclosed guide, "Integrity: The Spirit & Letter of Our Commitment," which pertains to compliance with the Company's policies. My signature and return of this acknowledgment form constitutes my acknowledgment of receipt of that guide and my personal commitment to comply with the policies described in that guide

    - my review and agreement to the enclosed Employee Innovation and Proprietary Information Agreement (Form FN 348-C).

    - my review and agreement to the terms of the enclosed RESOLVE Program. My signature and return of this acknowledgment form constitutes my acknowledgment of receipt of the RESOLVE Policy and the RESOLVE Process Employee Handbook, my acknowledgment that I have read and understand the terms of the RESOLVE Program and my agreement to resolve employment-related disputes in accordance with the terms of the GE Plastics RESOLVE Dispute Resolution Process as described in the RESOLVE Policy and RESOLVE Process Employee Handbook. I further understand that I am considered to be a "current employee" for the purposes of the application of the RESOLVE Policy and that as a current employee I agree to follow the steps of the RESOLVE Program prior to pursuing in court "covered claims" as that term is defined in Section II(M) of the RESOLVE Policy.

    - my review of the enclosed Workplace Harassment brochure. My signature and return of this acknowledgement constitutes my acknowledgement of receipt of the information and my personal commitment to comply.

2.  I understand that any employment with the Company would not be for any fixed period of time. I understand that I can resign at any time, for any reason, or the Company may terminate my employment at any time for any reason in the absence of a specific written agreement to the contrary. I understand that my employment-at-will status may not be modified or changed except in writing and signed by a duly authorized officer of the Company.

3.  In the event I voluntarily terminate my employment, I agree to reimburse the Company for any outstanding monies owed the Company that have not been repaid by the time employment is terminated. I further authorize the Company, to the extent permitted by law, to deduct and offset any payments, including but not limited to payments for wages, bonuses, expenses, or vacation pay, otherwise owed to me upon termination of employment. If these deductions are insufficient, I agree to reimburse the Company for the balance.

I accept the conditions of employment described above:

Name: (Please print full name): _Laurie J. couto_     Soc. Sec # ▮▮▮▮▮▮

Signature: _[signature]_     Date: _1-25-01_

*Laurie Couto v. SABIC Innovative Plastics Salary Continuance Plan, et al.*

12-CV00633

Stipulation and [Propose] Order Regarding Non-Binding Mediation and Arbitration, Stay of Proceedings, and Case Schedule

**EXHIBIT B**

| TITLE:<br>**SABIC Innovative Plastics RESOLVE Dispute Resolution Program** | EFFECTIVE DATE:<br>See below | |
| --- | --- | --- |
| | PAGES:  34 | REVISION: One[1] |
| ISSUED BY: Marty Gervasi – Sr. Human Resources Mgr. | Issued:  May 2, 2008 | |

**ABSTRACT:** Describes a four-level program to resolve employment-related concerns/claims of exempt and non-exempt non-represented of SABIC Innovative Plastics employees ("SABIC Innovative Plastics" or the "Company")(including employees of SABIC Innovative Plastics US LLC, SABIC Petrochemicals Holding US, Inc., SABIC Innovative Plastics Mt Vernon, Inc., Exatec LLC – and all of their related businesses) by internal discussions between employees and management, use of a peer review procedure (where applicable) and, in the case of covered claims, by external mediation and arbitration.  The effective date of this procedure depends on the employee's pay status (exempt or non-exempt) and the employee's business.

**EFFECTIVE DATE:** April 1, 1999 - for exempt employees working in SABIC Innovative Plastics (including employees of SABIC Innovative Plastics US LLC, SABIC Petrochemicals Holding US, Inc., SABIC Innovative Plastics Mt Vernon, Inc., and all of their related businesses)

October 1, 1999 - for non-exempt, non-represented employees working in SABIC Innovative Plastics (including employees of SABIC Innovative Plastics US LLC, SABIC Petrochemicals Holding US, Inc., SABIC Innovative Plastics Mt Vernon, Inc. and all of their related businesses)
.
June 1, 2008 – for employees of Exatec LLC

**ISSUED BY:** Marty Gervasi, Senior Human Resources Leader, SABIC Innovative Plastics

**SUPERSEDES:** RESOLVE Dispute Resolution Program (Newly Issued) [2]

**APPLIES TO:** All SABIC exempt employees and non-exempt, non-represented employees whose primary place of work is in the United States as described above.

**SPECIAL NOTICE TO EMPLOYEES**

THIS PROCEDURE IS A WRITTEN AGREEMENT FOR THE RESOLUTION OF EMPLOYMENT DISPUTES, PURSUANT TO THE FEDERAL ARBITRATION ACT; 9 U.S.C.A. SECTIONS 1 et. seq.

BY CONTINUING EMPLOYMENT WITH SABIC INNOVATIVE PLASTICS OR BY ACCEPTING A TRANSFER TO SABIC INNOVATIVE PLASTICS ON OR AFTER THE APPLICABLE EFFECTIVE

---

[1] This revision adds employee of Exatec LLC as eligible employees.  No other changes have been made from the RESOLVE Policy initially issued by SABIC Innovative Plastics on October 22, 2007.

[2] The SABIC Innovative Plastics RESOLVE Policy (issued on October 22, 2007) incorporated SABIC's adoption of the RESOLVE Policy of GE Plastics.  The sole change in the SABIC Innovative Plastics Policy from the last revision of the GE Plastics Policy was the removal of references to GE and its operating units.

2

DATE OF THIS PROCEDURE (AS DESCRIBED ABOVE), ALL SABIC INNOVATIVE PLASTICS EMPLOYEES WHOSE PRIMARY PLACE OF WORK IS THE IN THE U.S. AND WHOSE DATE OF HIRE BY ANY BUSINESS COMPONENT OF SABIC INNOVATIVE PLASTICS OR ITS PREDECCESSOR, GENERAL ELECTRIC COMPANY WAS BEFORE THE APPLICABLE EFFECTIVE DATE LISTED ABOVE AGREE, AS A CONDITION OF EMPLOYMENT, TO COMPLETE THE STEPS OF THE RESOLVE PROGRAM FOR ANY COVERED CLAIM (ON EITHER AN INDIVIDUAL OR CLASS ACTION BASIS) ARISING ON OR AFTER APPLICABLE EFFECTIVE DATE BEFORE PURSUING THEIR COVERED CLAIMS IN COURT.

BY ACCEPTING AN OFFER OF EMPLOYMENT WITH SABIC INNOVATIVE PLASTICS, OR ACCEPTING OR BY TRANSFERRING TO SABIC INNOVATIVE PLASTICS ON OR AFTER THE APPLICABLE EFFECTIVE DATE OF THIS AGREEMENT (AS LISTED ABOVE), ALL SABIC INNOVATIVE PLASTICS EMPLOYEES WHOSE PRIMARY PLACE OF WORK IS IN THE U.S. AND WHOSE DATE OF HIRE BY ANY COMPONENT OF SABIC INNOVATIVE PLASTICS OR ITS PREDECCESSOR, GENERAL ELECTRIC COMPANY WAS ON OR AFTER THE APPLICABLE EFFECTIVE DATE (AS LISTED ABOVE), AGREE AS A CONDITION OF EMPLOYMENT TO WAIVE THE RIGHT TO PURSUE COVERED CLAIMS IN COURT ON AN INDIVIDUAL OR CLASS ACTION BASIS AND TO ACCEPT AN ARBITRATOR'S DECISION AS THE FINAL, BINDING AND EXCLUSIVE DETERMINATION OF THE EMPLOYEE'S COVERED CLAIMS.   FOR SUCH EMPLOYEES, SABIC INNOVATIVE PLASTICS ALSO AGREES TO ACCEPT ANY AWARD ISSUED BY AN ARBITRATOR AS FINAL, BINDING AND EXCLUSIVE DETERMINATION OF THE EMPLOYEE'S PERSONAL COVERED CLAIMS.

THIS AGREEMENT IS THE SOLE AND COMPLETE AGREEMENT BETWEEN THE COMPANY AND ITS EMPLOYEES, AND IS THE ONLY EMPLOYMENT AGREEMENT BETWEEN THE EMPLOYEE AND SABIC INNOVATIVE PLASTICS OR ITS PREDECCESSOR COMPANY, GENERAL ELECTRIC COMPANY.   **THIS PROCEDURE DOES NOT CHANGE THE EMPLOYMENT-AT-WILL RELATIONSHIP BETWEEN THE COMPANY AND ITS EMPLOYEES**. THIS PROCEDURE IS EFFECTIVE ONLY TO THE EXTENT PERMITTED BY LAW.


I.      **PURPOSE**

The RESOLVE Program (RESOLVE) provides the Company and its employees a process to resolve concerns/claims arising out of an individual's employment.

II.     **GENERAL**

A.      Summary of the RESOLVE Program

Employees[3] are encouraged to resolve disputes informally, either through dialogue with their immediate  manager, others in the management chain, a human resources (HR) representative, etc.  However, occasionally informal efforts do not resolve an employee's concern/claim and, in such cases, an employee may submit his or her concern/claim to the RESOLVE Program.

The RESOLVE Program is a structured dispute resolution process that consists of two internal levels of review followed, if the concern is a "covered claim" (see II.M.), by outside mediation (Level III) and if necessary, arbitration (Level IV).  The levels of the RESOLVE Program are in a logical sequence and employees must complete each level of the process before proceeding to the next level.   However, if the Company agrees, the employee may submit his or her concern/claim initially to the RESOLVE Program at Level II.

---

[3] The phrasing adopted In this procedure addresses use of RESOLVE by employees as, predominately, employment disputes involve employees bringing claims against their employer.  This procedure, however, is expressly intended to also cover claims the Company may seek to bring against an employee, consistent with the limitations set forth respecting both "covered claims" and "excluded claims".

3

At internal Levels I and II, an employee and the management team (and/or a panel of the employee's peers if there is a formal peer review process at the site where the employee works) meet in an attempt to resolve the employee's concern/claim.  If the employee is not satisfied with the outcome of Levels I and II, and the concern is a covered claim (see II.M.), the employee may submit the claim to Level III.  At Level III, an outside mediator helps the employee and the Company open lines of communication in an attempt to facilitate resolution.  If the employee and the Company do not reach resolution at Level III, the employee may submit the covered claim to Level IV, arbitration.  At arbitration, an outside arbitrator provides the employee and the Company with a written ruling on the merits of the employee's covered claim(s).  Both mediation and arbitration will be administered by the American Arbitration Association (the "Association") or other alternative dispute resolution service otherwise acceptable to the Company and Employee.

Upon exhausting the levels of the RESOLVE Program, SABIC Innovative Plastics employees who were hired or rehired by any SABIC Innovative Plastics or any business component of General Electric Company (SABIC Innovative Plastics' predecessor) before the applicable Effective Date of this procedure (as listed above) may file their claim in court if employee or Company does not agree to accept the arbitrator's decision as settlement of the claim.  For employees hired or rehired by SABIC Innovative Plastics or General Electric Company (SABIC Innovative Plastics' predecessor) on or after the applicable Effective Date of this procedure (as listed above), the arbitrator's award is the final, binding and exclusive determination of the employee's covered claim.

B.    The RESOLVE Program's Relationship to Other Appeal Procedures

Employees may exercise the option of using informal appeal procedures before formally submitting their concerns/claims to the RESOLVE Program.  If an employee does not resolve his or her concerns/claims with the Company through informal means, or if the employee elects not to pursue informal means, the employee may formally submit his or her concerns/claims to the RESOLVE Program.  However, an employee may not use any other internal appeal procedures or means after submitting his or her concerns/claims to the RESOLVE Program.  If an employee elects to pursue an appeal through a site Peer Review Process, the employee is considered to be exercising his/her option to pursue his/her concern/claim through this RESOLVE Program and should be immediately informed that by requesting resolution through peer review, he has elected to use the RESOLVE Program.

C.    The RESOLVE Program's Relationship to SABIC Innovative Plastics' Code of Ethics

The RESOLVE Program is not a substitute for reporting compliance concerns to the Company.  Employees with such concerns must promptly report them using one of the established reporting channels available for reporting such concerns.

D.    Eligible Employees

All SABIC Innovative Plastics exempt employees and non-exempt, non-represented whose primary place of work is in the United States (including employees of SABIC Innovative Plastics US LLC, SABIC Petrochemical Holding US, Inc., SABIC Innovative Plastics Mt Vernon, Inc., Exatec LLC. and all of their related businesses)

F.    Duration and Modification

The RESOLVE Program is a program which the Company may at its sole discretion modify or discontinue at any time by giving employees 30 calendar days notice.  If there are conflicts between the requirements of this procedure and other Company publications or statements by Company representatives, the requirements of this procedure are controlling.  This procedure

4

constitutes the sole agreement between the Company and its employees concerning the requirements of the RESOLVE Program and may not be modified by written or oral statements of any Company representative, except under the authority of the Senior Human Resources Leader of the Company.  An employee shall complete the processing of any concern/claim pending in the RESOLVE Program at the time of an announced change, under the terms of the procedure as it existed when the concern/claim was initially submitted to the RESOLVE Program.

G.     New Employees

For the purpose of this procedure, new employees are defined as employees hired or re-hired by SABIC Innovative Plastics or any General Electric Company business component on or after the applicable Effective Date (as listed above), who accept an offer of employment with SABIC Innovative Plastics or transfer to SABIC Innovative Plastics  or any General Electric Company business component on or after the applicable Effective Date of this procedure.  New employees are required, as a condition of employment, to agree to participate in the RESOLVE Program as the exclusive alternative to filing covered claims in court.  For new employees who have not resolved their covered claims with the Company before the arbitration level of the RESOLVE Program, the arbitrator's decision shall be the final, binding and exclusive determination of all covered claims.   New employees whose employment terminates on or after the applicable Effective Date of this procedure continue their status as new employees solely for purposes of this procedure.

H.     Current Employees

For the purpose of this procedure, current employees are employees who were hired or rehired by SABIC Innovative Plastics or any General Electric Company business component before the applicable Effective Date and who continue their employment with SABIC Innovative Plastics or accept a transfer to SABIC Innovative Plastics or any General Electric Company business component on or after the applicable Effective Date of this procedure. By virtue of their continuing their employment with or accepting a transfer to SABIC Innovative Plastics or GE Plastics on or after the applicable Effective Date of this procedure, current employees are deemed to have accepted completion of the RESOLVE Program as a requirement before filing their covered claims in court for all claims arising on or after the applicable Effective Date.  Current employees whose employment terminates on or after the applicable Effective Date of this procedure continue their status as current employees solely for purposes of this procedure.

1.     Transferred Employees

Employees who accept a transfer to SABIC Innovative Plastics after applicable Effective Date of this procedure agree to be bound by the RESOLVE Program in accordance with its terms with respect to all claims that arise while working as a SABIC Innovative Plastics employee following their transfer.   Any agreement applicable to the Transferred Employee to resolve a dispute based on a dispute resolution program administered by another employer (except GE Plastics) prior to the employee's transfer shall be of no effect with respect to claims arising after the employee's transfer to SABIC Innovative Plastics.

I.     Former Employees

For the purpose of this procedure, former employees are former SABIC Innovative Plastics or GE Plastics employees who were not employed by SABIC Innovative Plastics or GE Plastics on the applicable Effective Date of this procedure and whose last day of work for SABIC Innovative Plastics or GE Plastics occurred before the applicable Effective Date of this procedure.  Former employees may request the Company's agreement to resolve covered claims through the RESOLVE Program.  The Company reserves the right to accept or reject, for any reason, the request of any former employee to submit his/her covered claims to the RESOLVE Program.  The

5

Company will consider accepting for the RESOLVE Program only the covered claims of former employees which are based on actions that occurred while these individuals were employed by the Company. In addition, a condition of the Company's acceptance of a former employee's request to use the RESOLVE Program to resolve covered claims shall be the former employee's waiver of the right to pursue such covered claims in court and agreement to accept the arbitrator's award as the final, binding and exclusive determination of such covered claims.

J.      Filing Charges with Government Agencies

Nothing in this procedure is intended to discourage or interfere with the legally protected rights of employees to file administrative claims or charges with government agencies. Such agencies include, but are not limited to, the Equal Employment Opportunity Commission (EEOC), the Office of Federal Contract Compliance Program (OFCCP), the Department of Labor (DOL), the National Labor Relations Board (NLRB) or state or local fair employment practices agencies.

For example, the Company recognizes the exclusive jurisdiction of the National Labor Relations Board concerning issues which arise under the National Labor Relations Act. This procedure does not apply to charges under the National Labor Relations Act and does not prevent employees from filing unfair labor practice charges with the NLRB.

However, if an employee files a charge with the EEOC, OFCCP, or with state or local fair employment practices agencies, the Company may request the agency to defer its processing of the charge until the employee and the Company have completed the RESOLVE Program.

K.      The RESOLVE Program Administrator

The RESOLVE Program Administrator will work with the site HR Manager to:

1.      Coordinate the receipt of employees' concerns/claims with managers and with HR representatives;

2.      Answer questions about the RESOLVE Program;

3.      Monitor the Company's compliance with all time requirements;

4.      Work with the Association to schedule mediation meetings and arbitration hearings at Levels III and IV;

5.      Schedule training sessions as needed;

6.      Process requests for production of information;

7.      Schedule the Company's participation in pre-arbitration communications with arbitrators and with employees regarding specific discovery issues;

8.      Work with Company representatives, employees, their attorneys and the Association to select and schedule mediators and arbitrators;

9.      Process requests for reimbursement of experts' and attorneys' fees;

10.     Process the terms and conditions of dispute resolutions;

11.     Function as the Company's administrative liaison with the Association; and

12.     Process requests for extensions of the procedure's deadlines.

6

L.      The SABIC Innovative Plastics Ombudsperson

The SABIC Innovative Plastics ombudsperson(s) function(s) as a designated neutral in disputes between employees and the Company.   The ombudsperson can provide information to employees about the Company's policies, practices and procedures, including the RESOLVE Program.   However, the ombudsperson is an alternative resource available to employees and does not participate in formal problem-solving proceedings.   Consequently, the SABIC Innovative Plastics ombudsperson is available to counsel employees in connection with employees' concerns at any time but the ombudsperson will not attend the RESOLVE Program meetings between employees and Company representatives.

M.      Covered Claims

While employees may submit to the appropriate Company representatives any employment-related concern/claim at internal Levels I and II, only covered claims will be accepted and processed at Levels III and IV.   Covered claims are employment-related claims against the Company or individual managers acting within the scope of their employment that a court in the jurisdiction in question would have the authority to decide under any municipal, state, or federal statute, regulation, or application of common law.   Covered claims do not include excluded claims described below.

Covered claims are claims that allege the violation of certain legally protected rights in a jurisdiction which recognizes such rights and include, but are not limited to, the following:

　　　　1.      Claims relating to compensation (including claims under the Fair Labor Standards Act or the Equal Pay Act or similar state laws), leaves of absence (including the Family Medical Leave Act or similar state laws) and notice of mass layoffs and/or plant closings (including the Worker Adjustment & Retraining Notification Act or similar state laws);

　　　　2.      Claims relating to involuntary terminations such as layoffs and discharges (including constructive discharges);

　　　　3.      Employment discrimination and harassment claims based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability or other characteristic protected by law;

　　　　4.      Retaliation claims for legally protected activity, and/or for whistleblowing;

　　　　5.      Claims of breach of contract or covenant (express or implied) and/or promissory estoppel;

　　　　6.      Tort claims (intentional torts, negligence, defamation, invasion of privacy, infliction of emotional distress, etc.);

　　　　7.      Claims of violation of public policy;

　　　　8.      Claims of violation of this procedure, except for violation of the confidentiality requirements of this procedure; and/or

　　　　9.      Claims that the Company and the employee agree are covered claims.

N.      Excluded Claims

The following claims shall be excluded from Levels III and IV of the RESOLVE Program:

7

1.   Claims which do not allege legally protected or enforceable rights in the jurisdiction in question;

2.   Alleged violations of the federal False Claims Act (except retaliation claims) or federal procurement laws or regulations;

3.   Claims for benefits under a Company benefit plan covered by the Employment Retirement Income Security Act of I974 (ERISA), or any other claims covered by ERISA (including claims of service miscalculation to the extent that such calculations determine eligibility for or level of benefits under any plan governed by ERISA);

4.   Claims for workers' compensation, violations of specific safety requirements or unemployment compensation benefits;

5.   Claims seeking injunctive relief and related to an alleged breach of an employee's non-competition, non-solicitation, fiduciary or confidentiality obligations;

6.   Claims of theft or misappropriation of proprietary information or intellectual property or seeking injunctive relief involving patents, trademarks, other intellectual property or SABIC Innovative Plastics' or General Electric Company's "Employee Innovation and Proprietary Information Agreement"

7.   Claims related to ownership of intellectual property covered by SABIC Innovative Plastics' or General Electric Company's "Employee Innovation and Proprietary Information Agreement"

8.   Claims the resolution of which require jurisdiction over third parties that are not parties to this RESOLVE procedure;

9.   Claims under the National Labor Relations Act;

10.  Claims against individual managers which allege conduct outside the scope of the managers' employment;

11.  Claims which seek to establish or modify the Company's policies or procedures; and/or

12.  Claims that the Company at its sole discretion determines are excluded claims.

The exclusion of Company benefit plans described above precludes a claim alleging a violation of such plans but shall not prevent an arbitrator from including in an award, in connection with a covered claim, the monetary value of lost Company benefits caused by a wrongful termination of employment or other violation of law.

O.    Exhaustion of Resolution Levels

The employee and the Company must satisfy the requirements at each level, except (if the parties agree) Level I, before proceeding to the next level.  For example, the employee may not proceed to mediation at Level III before completing internal Level II, nor can the employee proceed to arbitration at Level IV before completing mediation (Level III).  Of course, the parties may complete the RESOLVE Program by resolving concerns/claims at any level.

While the Company encourages employees to attempt to resolve disputes at Level I, the Company recognizes that there may be occasions when employees would prefer to initiate their concerns/claims at Level II.  When an employee submits a concern/claim initially to the RESOLVE

8

Program, the employee may request on the submission form (Appendix A-1) to skip Level I. The RESOLVE Program Administrator will advise the employee before the first scheduled meeting whether the Company agrees to discuss the concern/claim initially at Level II. Note:  Level I may not be skipped if the employee elects to utilize Level II, Option 2 (Peer Review) (see III.B below).

An employee's failure to submit covered claims at all levels of the RESOLVE Program within the deadlines established by this procedure constitutes a failure to complete the RESOLVE Program, unless the parties agree to an extension of deadlines or the arbitrator rules that such failure was the result of excusable delay.  **Failure of a current employee to complete Levels I through IV of the RESOLVE Program prohibits the employee from filing covered claims in court**.

P.      Statutes of Limitation and Administrative Agency Filing Deadlines

In order to submit covered claims to Level III of the RESOLVE Program, employees must have submitted such claims to Level I before the expiration of the statutes of limitation and administrative agency filing deadlines for such covered claims.   However, employees may process concerns/claims through Levels I and II without regard to whether or not applicable statutes of limitation and administrative agency filing deadlines have expired.

The Company's failure to reject a covered claim which an employee submitted to Level I of the RESOLVE Program after the expiration of the applicable statutes of limitations or administrative agency deadlines shall not waive the Company's right to assert as a defense at a later time the untimeliness of a covered claim.

A statute of limitation is the time period within which a person must file a claim in court.  The length of the applicable statute(s) of limitation is determined by the legal nature of the claim. Different statutes of limitation apply to different claims.  Courts do not have authority to decide claims or grant relief with respect to claims filed after the expiration of applicable statutes of limitation.  The time period for filing a claim in court normally begins with the occurrence of the event or conduct which is the basis of a person's claim.  The time period for filing the claim in court ends upon the expiration of the time period established by the applicable statute of limitations.

Administrative agency filing deadlines can affect an employee's legal rights in different ways.  For example, some statutes require individuals to file administrative claims with government agencies (e.g., EEOC or state fair employment practices agencies) as a prerequisite for filing such claims in court.   In this context, administrative agency filing deadlines are the time period within which individuals must file administrative claims with federal, state or local agencies.  Such deadlines may also apply to the time period for filing a claim in court after a government agency has discontinued its investigation of the claim.

An employee's initial submission of a covered claim to the RESOLVE Program before the expiration of the applicable statute of limitations or agency administrative filing deadlines will stop the further running of the statute of limitations and the administrative agency filing deadlines. Except as indicated in the preceding sentence, the time required to complete the RESOLVE Program will not be included in the running of the applicable statute(s) of limitation or administrative agency filing deadline if a current employee elects to file a covered claim in court after completion of the RESOLVE Program.   However, the applicable unexpired statutes of limitation and administrative agency filing deadlines shall restart and continue to run if the employee withdraws his claim/concern or does not submit it to the next level of the process within the deadlines established by this procedure, or in any event within five (5) calendar days after the date of mailing of the arbitrator's decision to the employee.

Employees shall be solely responsible for determining the correct statute(s) of limitation and/or administrative agency deadlines applicable to their covered claims.

9

Q.     Deadlines Established by this Procedure

This procedure establishes deadlines for certain actions.  Examples include, but are not limited to, deadlines for raising concerns/claims to different levels of the RESOLVE Program, the Company's issuing written responses and completion of discovery at the arbitration level. Deadlines are established by this procedure rather than by law and are distinct from statutes of limitation.

Both parties will make a good-faith effort to comply with the deadlines in this procedure.  The Company's failure to respond at any level of this procedure to the employee's submission of a concern/claim before expiration of the applicable deadline shall constitute a denial of the concern/claim with the exception of Level IV from the date of the deadline and enable the employee to submit his/her concern/claim at the next level. An Employee's failure to adhere to the stated deadlines shall only be excused if approved by request to the RESOLVE Administrator or arbitrator for good and sufficient cause.  It shall be the employee's burden to establish such good and sufficient cause to the satisfaction of the RESOLVE Administrator (Steps I, II and III) or the Arbitrator (Step IV).  The unexcused failure of the employee to adhere to any deadline may serve as a basis for an appropriate sanction or an assessment against any award or settlement of penalty fees by the Arbitrator.

If a party fails to meet a deadline at either Level II or Level III and remains in default for 30 days without good and sufficient cause, the claim will be deemed abandoned any prior tolling will be forfeited.  In the event the party subsequently wishes to pursue the abandoned claim, the claim must be pursued as a new claim.  Abandonment of any claim shall not relieve the current employee or the Company from its' obligation to first proceed through the RESOLVE process on a timely basis prior to commencing litigation.

The arbitrator shall have the exclusive authority to decide any dispute raised at Level IV between the employee and the Company concerning the employee's compliance with the deadlines of this procedure.  The arbitrator's authority includes, but is not limited to, deciding whether to excuse an employee's or the Company's failure to comply with any of the deadlines in this procedure, the imposition of an appropriate sanction and/or assessment of penalty fees, if the Company raises such failure as a defense to the employee's claims at Level IV.

R.     Severability

If any term, condition or provision of this procedure is found by a court of competent jurisdiction to be invalid, void or unenforceable, the remaining provisions of this procedure shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

S.     Rules of Administration for Mediation and Arbitration

Except as provided otherwise by this procedure, the mediation and arbitration of covered claims will be administered by the American Arbitration Association under its current "National Rules for the Resolution of Employment Disputes" for mediation (mediation rules) and for arbitration (arbitration rules), as may be amended without notice by the Association.  A copy of the Association's mediation rules and arbitration rules may be obtained from the RESOLVE Program Administrator, or from the Association, as described in Appendix B.  Whenever there is a difference between the requirements of this procedure and the Association's mediation rules and/or arbitration rules, the parties shall follow this procedure.  However, the Association's rules shall apply to the extent that they establish procedural due process or they do not conflict with the requirements of this procedure.

T.     Agreement to Arbitrate in Interstate Commerce

10

This procedure is an agreement to arbitrate pursuant to the Federal Arbitration Act, 9 U.S.C.A. Sections <u>et</u>. <u>seq</u>., or if that Act is held to be inapplicable for any reason, the arbitration law in the state in which the arbitration hearing is held.   The parties acknowledge that the Company is engaged in transactions involving interstate commerce and that the employees eligible to participate in the RESOLVE Program are not employed by the Company as seamen, railroad employees, or other class of worker engaged in foreign or interstate commerce.

U.      <u>Retaliation is Prohibited</u>

Company employees at all levels are prohibited from retaliating against anyone for submitting a concern/claim to or otherwise participating in the RESOLVE Program.

V.      <u>Consolidation of Additional Covered Claims by the Same Employee</u>

The employee is solely responsible for including in the RESOLVE Program submission forms all covered claims which arise from the same set of facts.  Consequently, if an employee wants to raise, or raises in any manner at any time during the RESOLVE Program process, new covered claims or new facts which give rise to new covered claims, the employee shall include such claims and/or facts in a new submission form (Appendix A-1) at Level I. The Company at its sole discretion may consolidate new covered claims at the level of the employee's pending claims or may elect to address the new covered claims at Level I. The addition of a new covered claim does not alter the requirement that the covered claim must be submitted initially to the RESOLVE Program by the employee within the statute of limitation for such claim.

W.      <u>Consolidation of Similar Covered Claims by Different Employees</u>

If different employees submit covered claims that the Company believes present common facts and legal issues, the Company at its sole discretion may consolidate two or more such covered claims at Level III (mediation) or Level IV (arbitration).  The Company's consolidation of covered claims at these levels of the RESOLVE Program does not alter the requirement that each employee must meet the applicable statutes of limitation for his/her covered claims.

X.      <u>Restrictions against Employees' Obtaining Information Outside The Formal RESOLVE Program Process</u>

Employees and their attorneys must obtain the written consent of the Company's attorney before attempting to question or otherwise obtain from other employees documents or other information to support their concerns/claims.  Employees or their attorneys who wish to obtain access to other Company employees relative to the disputed matter(s) must submit a written request to the RESOLVE Program Administrator.  Employees or their attorneys who wish to obtain access to Company documents should refer to the section(s) of this procedure which describe documents available at each level.

The request should explain in detail the relevance of the request to the employee's concerns/claims.  The RESOLVE Program Administrator will refer such request to the Company's attorney for evaluation and will respond in writing to the employee.  If there is a dispute over the employee's access to Company documents and/or other employees as witnesses, the employee may seek a ruling from the arbitrator after the arbitrator has been appointed.

Y.      <u>Claims/Concerns Before Applicable Effective Date of the Procedure</u>

Current employees are required to use this procedure before litigation (for covered claims based on events which occurred on or after the applicable Effective Date). New employees must use this procedure as the exclusive alternative to litigation for covered claims based on events which occurred on or after the applicable Effective Date of this procedure.

11

However, employees with covered claims based on events which occurred before the applicable Effective Date of this procedure may request the Company's agreement to resolve such covered claims through the RESOLVE Program.  The Company reserves the right to accept or reject, for any reason, the request of an employee to submit such covered claim to the RESOLVE Program.  Such claims shall be limited to covered claims and the employee must submit such covered claims to the RESOLVE Program before the expiration of the statutes of limitation applicable to such covered claims.

A condition of the Company's acceptance of an employee's request to use the RESOLVE Program to resolve such covered claims shall be the employee's waiver of the right to pursue such covered claims in court and agreement to accept the arbitrator's award as the final, binding and exclusive determination of such covered claims.

III.     **PROCEDURE AND RESPONSIBILITY**

A.     **Level I - Manager Review**

    1.     Submission of Concerns/Claims -- Using the RESOLVE Program Submission Form (Appendix A-1), the employee shall submit his/her concerns/claims to the RESOLVE Program Administrator and site Human Resources Manager.  He/she may also provide copies to his/her manager.   Upon receipt of the employee's concern/claim, the RESOLVE Program Administrator or site Human Resources Manager will confirm receipt of the concern/claim with the employee, the employee's immediate manager.   The employee should keep a copy of the completed Appendix A-1 and keep a record of the date and names of the individuals to whom Appendix A-1 is submitted.

        Appendix A-1 requires employees to provide a detailed explanation of their concerns/claims, the individuals involved, and what the employees believe is necessary to resolve the concerns/claims.

    2.     Statutes of Limitation for Submission of Claims -- There are no time limits for employees' submission of concerns/claims at Levels I and II.   However, the Company shall not accept a covered claim at Level III, unless the employee has submitted his/her covered claims at Level I before the expiration of the federal or state statutes of limitation applicable to such claims.

    3.     Scheduling of Level I Meeting within 14 Days -- The RESOLVE Program Administrator and/or the site Human Resources Manager will confirm that the manager has scheduled a meeting with the employee at Level I which will occur on a date not later than fourteen (14) calendar days after the RESOLVE Administrator's receipt of the employee's written submission.

    4.     Attendees at Level I Meeting -- The Level I meeting shall be attended by the employee and his immediate manager.  Either the employee or manager may require the attendance of the employee's HR representative (or designee) at the Level I meeting.  No one may attend the meeting other than the employee, his/her manager and, if requested by either party, the employee's HR representative (or designee).  If the employee's manager was not directly involved with the events which form the basis of the employee's concerns/claims, the appropriate Company representatives may participate in the meeting.  While this procedure is not intended to prevent employees from seeking legal advice regarding the employee's concerns/claims, attorneys may *not* attend Level I meetings (unless the employee's manager is an attorney).

12

5. Requests for Documents and Other Information -- Employees may obtain from the RESOLVE Program Administrator documents concerning his/her employment that are available to employees from their personnel files and medical files. The RESOLVE Program Administrator (in coordination with the site Human Resources Manager) will make such documents available to the employee within seven (7) calendar days of receipt of the employee's written request.

If the employee believes that he/she needs documents, the employee may request from the RESOLVE Administrator such documents or other information that are material and relevant to the claim. The RESOLVE Administrator will, within seven (7) days, consider the request in good faith and provide such documents or other information that are material and relevant – in keeping with the expedited nature of this process and in consideration of the Discovery Guidelines in Section III.D.11 applicable to document production – but the Company shall not be required to provide any information that is proprietary, confidential or contains information about other employees.

6. Meeting Length and Format -- Level I will consist of a single meeting not to exceed two (2) hours, unless the employee and manager agree to extend the meeting or to hold additional meetings. At the meeting, the employee shall state the reasons why the Company should resolve the concerns/claims in the employee's favor. In addition to the discussion, the employee may present written information or documents. (While a personal meeting is preferable, a Level I meeting may be conducted by a conference call or video conference. If the Level I meeting is conducted by a conference call, all attendees must identify themselves at the start of the call.)

7. Recording of the Proceedings -- Neither the employee nor the manager may make a formal record or transcript or use any electronic recording device at the Level I meeting. However, both the employee and the manager may make handwritten notes during the meeting.

8. Confidentiality and Inadmissibility of Settlement Discussions -- Statements by the employee and the Company's representatives at Level I (including the Company's written response) are understood to be solely for the purpose of reaching settlement of the employee's concerns/claims and shall be kept confidential by the employee and on a "need-to-know" basis by the Company. Where the RESOLVE Administrator or site Human Resources Manager acts to facilitate resolution of the claim, any statements by either will likewise be understood to be solely for the purpose of reaching a settlement of the employee's concerns/claims and shall be kept confidential by the employee and on a need-to-know basis by the Company. However, nothing in this procedure shall restrict the Company's ability to interview witnesses and gather information to evaluate the employee's concerns/claims.

Neither party, unless compelled by law, shall attempt to use statements made by the other party at the meeting in any arbitral, judicial or other proceeding to impeach the testimony of the other party's witnesses, or as evidence of (a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; (b) admissions made by another party in the course of meeting; (c) proposals made or views expressed by the other party; or (d) the fact that the other party had or had not indicated willingness to accept a proposal for settlement.

13

However, the employee may disclose the contents of the meeting to his/her spouse and attorney, provided they first agree not to disclose such information to others.

Notwithstanding this provision or any other confidentiality requirement of this procedure, nothing in this procedure shall prevent employees from communicating or cooperating with any U.S. Government investigation into matters which occurred during the RESOLVE Program or during their employment with the Company.

9.   Written Response or Settlement Agreement -- Resolution of a concern/claim at Level I will be documented either by the Company's written response or, in certain cases, by a settlement agreement and release. If resolution of the employee's concern/claim includes the payment of money, the awarding of employment benefits, reinstatement or rehire of a terminated employee, a promotion, and/or assignment of any employee to another position, the employee and the Company will enter into a signed settlement agreement and release of all claims against the Company and its representatives related to the employee's employment.

In those instances in which the Company asks the employee to sign a settlement agreement and release, the employee should not sign the agreement unless he/she understands and agrees with the terms and conditions of the proposed agreement. If the employee is not satisfied with the Company's written response, or if the employee does not agree with the terms of the proposed settlement agreement, the employee may submit his/her concern/claim to the next level.

10.   Company Response within 14 Days -- The Company will, subject to the preceding provision (confidentiality, etc.), provide the employee with the Company's written response within fourteen (14) calendar days of the conclusion of the last Level I meeting.

B.   **Level II - Higher Level Manager Review or Peer Review**

At Level II, an employee has an option to select one of two manners in which his/her concern/claim may be reviewed.  The employee may elect either one of the following options:

(1) to have a higher level manager review the concern/claim (normally the one-over-one manager).  This is referred to as Level II - Option 1 ("Higher Management Review");

**or**

(2) to have the site convene a Peer Review Panel in a manner consistent with written policies and established practices of the site.  This is referred to as Level II – Option 2 ("Peer Review").

**Note**:  If the site where the dispute arises does not have a written Peer Review Process in place or the Peer Review Process does not, pursuant to its terms, have jurisdiction to hear the concern/claim at issue, the employee may not elect Option 2 and must utilize Option 1 ("Higher Management Review").

### Option 1:  Higher Management Review

1.   Submission of Concerns/Claims -- At Level II, the employee shall use Appendix A-2 to submit his/her concerns/claims to the RESOLVE Program Administrator

14

and site Human Resources Manager.  At Level II Appendix A-2 requests the employee to provide any additional information regarding his/her concerns/claims, including information which conflicts with the Company's stated reasons for not resolving the employee's concerns/claims at Level I.  The employee must also indicate on Appendix A-2 which option for Level II review he/she is requesting (Higher Level Management Review or Peer Review).  Employees who are permitted by the Company to submit concerns/claims initially at Level II shall provide in Appendix A-2 the information required at Level I.  If the employee selects Option 1 (Higher level Management Review), the RESOLVE Program Administrator shall immediately provide copies of the employee's concerns/claims at Level II to the appropriate higher-level manager (or designee) and HR representative (or designee).  If the employee selects Option 2 (Peer Review), the RESOLVE Program Administrator will shall immediately provide copies of the employees concerns/claims to the individual on site who has responsibility for administering the Peer Review Process at that site.

2.      Statutes of Limitation for Submission of Claims -- Same as Level I.

3.      Fourteen (14) Days to Submit Concerns/Claims to Level II -- The employee must submit his/her concerns/claims at Level II within fourteen (14) calendar days of the date of issuance of the Company's written response to the employee at Level I.  Employees who, with the Company's written agreement, skip Level I and submit their claims initially at Level II, may not submit their covered claims to Level III unless they submitted such claim to Level II before the expiration of the statutes of limitation applicable to such covered claims.

4.      Scheduling of Level II Meeting within Fourteen (14) Days -- The RESOLVE Program Administrator and/or site Human Resources Manager will confirm that the higher-level manager (or designee) has scheduled a meeting with the employee at Level II on a date not later than fourteen (14) calendar days after the RESOLVE Administrator's receipt of the employee's written submission.

5.      Attendees at Level II Meeting -- The Level II meeting shall include the employee, a higher-level manager than the manager who attended the Level I meeting (or his/her designee) and the appropriate HR representative (or designee).  In addition, either the employee or higher-level manager (or designee) may require the attendance of any Company representative who attended the Level I meeting.  The Company may also involve, as necessary, other Company representatives at the Level II meeting.  No one else may attend the meeting other than those identified in this paragraph.  While this procedure is not intended to prevent either party from seeking legal advice concerning the employee's concerns/claims, attorneys may *not* attend the Level II meeting.  If the Company representative who attended the Level I meeting is a Company Vice President, another Company Vice President (even if not in the same function or reporting chain) may be the higher level manager to attend the Level II meeting.

6.      Requests for Documents and Other Information -- Same as Level I.

7.      Meeting Length and Format -- Same as Level I.

8.      Recording of the Proceedings -- Same as Level I.

9.      Confidentiality and Inadmissibility of Settlement Discussions -- Same as Level I.

10.     Written Response or Settlement Agreement -- Same as Level I.

15

11.      Company Response Within Fourteen (14) Days -- Same as Level I.

**Level II  (Option 2:  Peer Panel)**

Note:  **This option is only available at those sites where there is a formal, written peer review procedure and by the terms of that written procedure, a peer review panel has jurisdiction to resolve the concern/claim raised by the employee (i.e., the subject matter is covered under the site procedure and the concern/claim was filed at Level I within the time frame required to bring a claim under the site Peer Review Procedure).**

1.      Submission of Concerns/Claims -- Same as Level II (Option 1).

2.      Statutes of Limitation – Same as Level II (Option 1).

3.      Days to submit Concerns/Claims -- The concern/claim must be filed with the RESOLVE Administrator at Level I within the time frame established under the site procedure for raising a claim through the site Peer Review procedure.  In no event shall the time period required to submit a claim unresolved at Level I to Level II (Option 2) be less than 14 calendar days from the date of the Company response regardless of the terms of the local Peer Review Policy.

4.      Scheduling of Peer Review Panel Deliberation - Per site peer Review Procedure

5.      Attendees at Peer Review Deliberations -- As defined in local site Peer Review Procedure policy and practices.  If not defined in local site Peer Review Procedure, same as Level II (Option 1)

6.      Requests for Documents and Other Information -- Same as Level I.

7.      Meeting Length and Format -- As defined by the site Peer Review Policy.

8.      Recording of the Proceedings -- Same as Level I.

9.      Confidentiality and Inadmissibility of Settlement Discussions -- Same as Level I.  Members of the Peer Review Panel will be informed of the confidentiality requirements and must agree to abide by them prior to the Level II, Option 2 meeting.  If a potential member of the Peer Review Panel does not agree to be bound by the confidentiality provisions, he/she will not be permitted to serve on the Peer Review Panel.

10.     Written Response or Settlement Agreement -- Same as Level I.

11.     Peer Review Panel Response -- Per site Peer Review Procedure but not later than Fourteen (14) Days from time panel hears evidence

C.      **Level III - Mediation**

Note:  **Mediation/Covered Claims Only -- Only covered claims shall be processed at Level III (mediation) - Covered claims shall not be processed at Level III unless the employee submitted such claims to Level I before the expiration of statutes of limitation applicable to such claims.**

16

1.  Description -- Mediation involves an attempt by the parties to resolve their dispute with the aid of a neutral third party not employed by the Company.  The mediator's role is advisory.  The mediator may offer suggestions but resolution of the dispute rests with the parties themselves.  Mediation is a process that seeks to find common ground for the voluntary settlement of covered claims.  The Level III proceedings are confidential and private.

    The mediator may meet with the parties jointly or separately in order to facilitate settlement.  While there is some variation among the methods of different mediators, most mediations begin with a joint meeting of both parties and the mediator.  The mediator normally gives each party an opportunity to explain the dispute, including the reasons that support each party's position.  The joint session is followed by private, confidential caucuses between the mediator and each party.

    The majority of the time spent in mediation consists of the mediator's efforts to facilitate a settlement by dividing his time between the parties in their respective caucus rooms.  The mediator tries to help each party better understand its own and the other party's position and expectations.  Both parties may propose terms of settlement, accept or reject the terms of any settlement proposal, and/or by written declaration may terminate the mediation at any point in the proceedings.

    The Mediator may or may not suggest ways of resolving the dispute after listening to both sides, but the mediator may not impose a settlement on the parties.  The mediator may also end the mediation whenever, in the judgment of the mediator, further efforts at mediation would not contribute to a resolution of the dispute.

2.  Statutes of Limitation for Submission of Covered Claims -- The Company shall not accept covered claims at Level III, unless the employee submitted his/her covered claims to Level I before the expiration of the statute of limitations applicable to such claims.  The inclusion of a disputed claim as a "Covered Claim" does not constitute a waiver of the right to raise a statute of limitations or other appropriate defense in any subsequent procedure.

3.  Submission of Claims to Level III (Mediation) and Time Limits -- The employee shall use Appendix A-3 to submit his/her covered claims to the RESOLVE Program Administrator and site Human Resources Manager at Level III, within thirty (30) calendar days of the date of issuance of the Company's written response at Level II or the issuance of a decision by the Peer Review Panel at Level II.  At Level III, Appendix A-3 requires the employee to include all legal claims that arise out of the same facts and to include all facts that support the employee's legal claims, including facts which conflict with the Company's/Peer Review Panel's stated reasons for denying the employee's claims at Level II.  In addition, employees are asked to include the dates of each alleged legal violation, the names of individuals who have knowledge about each alleged legal violation and the nature of their involvement, and any documents or other evidence which support the employee's claims.

    Within fourteen (14) calendar days of the RESOLVE Program Administrator's receipt of the employee's submission at Level III, the RESOLVE Program Administrator shall either reject the claim at Level III as not being a covered claim, or within fourteen (14) calendar days of the RESOLVE Administrator's receipt of the employee's submission at Level III, the RESOLVE Program Administrator and the employee and/or the employee's attorney shall file with the Association two (2) copies of the Association's form for jointly requesting

17

mediation of covered claims (Appendix C).  The request for mediation shall contain a brief description of the nature of the covered claims and the names, addresses and telephone numbers of all parties to the dispute and those who will represent them, if any, in the mediation.  If a joint agreement as to the nature of the covered claims cannot be agreed upon, the RESOLVE Administrator and the employee must submit separate statements of the nature of the claim(s) to the Association within seven (7) calendar days of the fourteen (14) day period described above.

4.      Selection of a Mediator -- The employee and the Company may select a mediator by agreement.  In the event of agreement, the RESOLVE Administrator will notify the Association of the name of the selected mediator and the Association will appoint the mediator.  If the employee and the RESOLVE Program Administrator cannot agree to the selection of a mediator before the submission of their request for mediation, the parties will include with their request for mediation, a request that the Association provide the parties a list of seven (7) mediators from the Association's panel of employment mediators.  The list will include, to the extent reasonably available, culturally diverse mediators.

The employee and the Company may each strike the names of up to three (3) mediators from the list.  The parties shall also independently rank the names of the mediators remaining on the list.  The parties shall rank the remaining names in the order of relative acceptance, from most acceptable to least acceptable.  The parties shall independently return their respective rankings to the Association within fourteen (14) calendar days of the Association's transmittal of the list.  If either party does not return the list within the time specified, all persons on such party's list shall be deemed acceptable to such party.  Beginning with the employee's ranking, the Association shall promptly appoint the mediator from those remaining on the list by alternately striking from the list the mediators ranked least acceptable by both parties.  The Association shall immediately notify the parties of the name of the mediator appointed.  If acceptable mediators are unable to serve, or if for any other reason an appointment cannot be made from the initial list, the Association shall submit a second list to the parties.  The parties shall repeat the same process of selection.  However, if for any reason the Association cannot make an appointment from the second list, the Association shall make the appointment from other members of its panel of employment mediators without the submission of additional lists.

5.      Qualifications of Mediators -- In addition to not having any financial or personal interest in the result of the mediation, mediators shall be licensed attorneys or former judges with a minimum of five (5) years' experience in the practice of employment law and in the mediation of employment claims.  (If both parties agree, mediators with other qualifications may be utilized, provided, the mediator has a minimum of five (5) years experience mediating employment disputes.)  The parties shall direct the Association to provide lists of local mediators to the parties to the extent that local mediators possess the qualifications required or agreed to by this procedure.  However, the parties will accept lists which include mediators that are not local to the jurisdictions in question to the extent that qualified local mediators are not available.

6.      Date, Time and Place of Mediation -- The parties may agree on a date and time for the mediation.  However, if the parties fail to agree before the appointment of the mediator, the mediator shall schedule the mediation on a normal business day during normal business hours, no later than ninety (90) calendar days after the date of the mediator's appointment.  Unless the parties agree otherwise, or the mediator directs otherwise, the parties shall use mutually satisfactory offices

18

of the Association.  If possible, the parties shall use the Association's office closest to where the employee's SABIC Innovative Plastics office is/was located.

7.     Length of Mediation -- Either the parties or the mediator may end the mediation at any point.  However, the length of the mediation shall not exceed one 8-hour day, unless both parties and the mediator agree to an extension.

8.     Requests for Documents and Other Information -- Same as Level I.

9.     Identification of Matters in Dispute -- At least fourteen (14) calendar days prior to the scheduled mediation, each party shall provide the mediator with a brief written summary of the dispute setting forth the party's position concerning all claims.

10.    Attendees at Mediation -- Either party may be assisted or represented by counsel.  Operating Management, with advice from the Company Counsel and the appropriate HR representative, shall determine in each case whether the Company will be represented by an attorney at mediation.

The mediation shall be a private meeting of the parties and the mediator.  Without the written agreement of both parties, no one may attend the mediation except the mediator, the employee, his/her spouse, attorneys, experts and witnesses, and/or the Company's attorneys, management personnel, experts and witnesses.   Under no circumstances shall members of the press/media, representatives of special interests groups or representatives of other employees be permitted to attend the mediation.

If not communicated earlier, each party shall communicate in writing to the other party at least fourteen (14) calendar days before the mediation the name and address of counsel and experts and the names of all witnesses who will attend the mediation.

11.    No Stenographic Record or Electronic Recording -- Neither the employee, the Company, nor anyone else may make a formal record or transcript, or use any electronic recording device at the mediation.  However, both parties may make handwritten notes during the mediation.

12.    Confidentiality and Inadmissibility of Mediation Discussions -- The mediator shall not divulge to anyone outside the mediation any information disclosed by the parties in the course of the mediation.  Except and only to the extent necessary to establish whether or not the mediation resulted in a settlement of the dispute and the terms of such settlement, the mediator shall not be called to divulge such records or to testify in regard to the mediation in any other proceeding or judicial forum.

All attendees shall maintain the confidentiality of the mediation.  On or before the date of the mediation, the mediator and all attendees shall sign the Mediation Confidentiality Agreement (Appendix D) or a similar agreement provided by the mediator.  Statements by all attendees at the mediation are understood to be solely for the purpose of reaching a settlement of the employee's claims and shall be kept confidential by the employee and on a need-to-know basis by the Company.

However, nothing in this procedure shall restrict the Company's ability to interview witnesses and gather information to evaluate the Employee's claims.

19

Except and only to the extent necessary to establish whether or not the mediation resulted in a settlement of the dispute and the terms of such settlement, neither party shall, unless compelled by law, attempt to use statements of the other party or the other party's representatives or witnesses in any arbitral, judicial or other proceeding to impeach the testimony of the other party's witnesses or as evidence of (a) views expressed or suggestions made by another party with respect to a possible settlement of the dispute; (b) admissions made by another party in the course of the mediation proceedings; (c) proposals made or views expressed by the mediator; or (d) the fact that the other party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

If, before the close of the initial mediation session or any extension, the parties fail to sign a full and final settlement agreement and release of all claims arising out the employee's employment, the mediation shall be deemed to have ended. The employee must submit such claims to Level IV (arbitration) within thirty (30) calendar days of the date of the RESOLVE Administrator's written notice of the end of the Level III Mediation, unless the parties have entered into a signed agreement with respect to such period.

However, the employee may disclose the contents of the mediation to his/her spouse and attorney provided they first agree not to disclose such information to others.

Notwithstanding this provision or any other confidentiality requirement of this procedure, nothing in this procedure shall prevent employees from communicating with or cooperating with any U.S. Government investigation into matters which occurred during the RESOLVE Program or during their employment with the Company.

13.    Settlement Agreement and Release -- If the parties reach an agreement to resolve the employee's covered claims, before the termination of the mediation, they will enter into a signed settlement agreement and release of all claims against the Company and its representatives related to the employee's employment.

14.    Costs and Fees -- The Company will pay (1) the Association's filing and other administrative fees; (2) the mediator's fee and reasonable travel and living expenses; (3) the expenses of any fact witnesses and the costs of any proofs or expert advice, provided they are produced solely at the direct request of the mediator; (4) the cost of renting mediation rooms, and (5) the employee's salary, if still employed by the Company, for the time spent at the mediation.

The Company shall pay the fees and expenses of the mediator by making such payments directly to the Association.   The Association shall then pay the mediator without disclosing the source of such payments.  To avoid disclosing to the mediator the source of the payment of his/her fees and expenses or other costs of mediation, all references to the "costs and fees" of the RESOLVE Program shall be removed from copies of this procedure which are provided to the mediator.

The parties shall each pay their own experts' and/or attorneys' fees and the costs to produce their respective witnesses.  However, in the event that the parties agree to a settlement at Level III and execute a settlement agreement and release, the Company will reimburse the employee up to total of $2,500 for his/her reasonable experts' and/or attorneys' fees directly related to the

20

mediation.  The Company will not reimburse employees for experts' or attorneys' fees for Levels I or II.

The employee must provide documentation from his/her attorney which identifies dates services were provided, allocations of time providing such services and hourly rates for fees and expenses directly related to the mediation.  The Company will issue a Form 1099 to the employee reflecting attorney fees issues above as non-wage income.

15.   If the mediation has been successful, Level III proceedings will conclude with the execution of a settlement agreement, or other arrangement agreed upon by the parties and/or the mediator.  If the mediation is unsuccessful, as determined by the mediator and/or the parties, Level III will conclude upon mutual agreement of the parties that mediation has been unsuccessful.

D.   **Level IV -- Arbitration**

1.   Description -- Arbitration is a dispute-resolution process in which the employee and the Company present their respective positions concerning the employee's claims to an impartial third-party arbitrator who determines the merits of the employee's claims.  An arbitration hearing resembles a court proceeding in certain ways.  Both parties have the opportunity to be represented by an attorney, to make opening statements, to present the testimony of witnesses and to introduce exhibits through witnesses, to cross-examine the other party's witnesses and to make closing statements.  Arbitration differs from mediation in that the arbitrator decides the merits of the employee's claims and can impose remedies.

2.   Attendees at Arbitration Hearings -- The employee may be assisted or represented by an attorney at Level IV.  The Company will be represented by an attorney at the arbitration hearing.  Either party may present expert witness testimony to the arbitrator.  Neither party may call more than ten (10) witnesses, including expert witnesses, during the presentation of its case-in-chief, unless both parties agree in advance or the arbitrator grants the request of a party to increase the number for good cause shown.

The arbitration hearing shall be a private hearing.  Without the written agreement of both parties, no one may attend the arbitration hearing except the arbitrator; an official recorder (if any); the employee, his/her spouse, attorneys, experts, and witnesses; and the Company's attorneys, the RESOLVE Administrator, Company management personnel, experts, and witnesses.  Under no circumstances shall members of the press/media, representatives of special interests groups, or representatives of other employees be permitted to attend the arbitration hearing.

At least thirty (30) calendar days before the arbitration hearing, each party shall provide written notice to the other party of the names and addresses of any expert witnesses the party intends to call as a witness at the arbitration hearing, as well as the names and addresses of any attorneys who will attend the arbitration hearing.  Each party shall also communicate in writing to the other party at least fourteen (14) calendar days before the arbitration hearing the names of all witnesses other than expert witnesses that the party may call to testify at the arbitration hearing.

3.   Confidentiality of Arbitration Hearings -- The arbitrator shall maintain the confidentiality of the hearings and shall have the authority to make appropriate rulings to safeguard that confidentiality unless the law provides to the contrary.

21

4.    Submission of Claims to Level IV (Arbitration) and Time Limits -- The employee shall use Appendix A-4 to submit his/her covered claims to the RESOLVE Program Administrator at Level IV, within thirty (30) calendar days of the date the parties and/or mediator determine that the mediation at Level III has not been successful. Appendix A-4 requests the employee to provide at Level IV any additional information regarding the employee's claims, including information that conflicts with the Company's stated reasons at the mediation session at Level III.

5.    Initiation of Arbitration -- Within thirty (30) calendar days of the RESOLVE Program Administrator's receipt of the employee's submission at Level IV, the RESOLVE Program Administrator and the employee and/or the employee's attorney shall file three (3) copies of a joint request for arbitration with the regional office of the Association pursuant to the arbitration rules.   The request for arbitration shall contain a statement setting forth the nature of the covered claims, the remedy sought (including the amount of damages claimed). The RESOLVE Program Administrator will forward the joint request to the Association.  The Association's form for requesting arbitration is Appendix E.

If a joint stipulated agreement of the claims cannot be agreed upon, the RESOLVE Administrator and the employee (or his/her attorney) must submit, within five (5) calendar days after the seven-day expiration, separate requests for arbitration to the Association and provide a copy to the other party.  The amount of damages claimed, if any, will be identified by the employee (or his/her attorney) in the employee's request for arbitration.   A copy of the separate requests for arbitration will be provided to the RESOLVE Administrator and the employee.

6.    Selection of an Arbitrator -- The employee and the Company may agree to the selection of an arbitrator.  In the event of agreement, the Company will notify the Association of the name of the selected arbitrator and the Association will appoint the arbitrator.  However, if the employee and the Company cannot agree to the selection of an arbitrator before the submission of their joint request for arbitration, the parties will include with their joint request for arbitration, a request that the Association provide each of the parties separately an identical list of seven arbitrators from the Association's panel of employment arbitrators.  The list will include, to the extent reasonably available, culturally diverse arbitrators.

The Association will also provide both parties the professional biographies, and qualifications.

The employee and the Company may independently strike the names of up to three (3) arbitrators from the list.  The parties shall also independently rank the names of the arbitrators remaining on the list.   The parties shall rank the remaining names in the order of relative acceptance, from most acceptable to least acceptable.  The parties shall independently return their respective rankings to the Association within fourteen (14) calendar days of the Association's transmittal of the list.

If either party does not return the list within the time specified, all persons on such party's list shall be deemed acceptable to such party.  Beginning with the employee's ranking, the Association shall promptly appoint the arbitrator from those remaining on the list by alternately striking from the list the arbitrators ranked least acceptable by both parties. The Association shall immediately notify the parties of the name of the arbitrator appointed.

22

If acceptable arbitrators are unable to serve, or if for any other reason an appointment cannot be made from the initial list, the Association shall submit a second list to the parties and the parties shall repeat the same process of selection.   However, if for any reason the Association cannot appoint an arbitrator from the second list, the Association shall make the appointment from other members of its panel of employment arbitrators without the submission of additional lists.

7.   Qualifications of a Neutral Arbitrator -- Section II of the Association 's arbitration rules shall apply.  However, unless the parties agree otherwise, this procedure modifies Section II to require that arbitrators shall be licensed attorneys or former judges with a minimum of five (5) years' experience in the practice of employment law and in the arbitration of employment law claims.  The parties shall direct the Association to provide lists of local arbitrators to the parties to the extent that local arbitrators possess the qualifications recognized by this procedure.  However, the parties will accept lists which include arbitrators that are not local to the jurisdictions in question to the extent that qualified local arbitrators are not available.

8.   Date and Time of Arbitration Hearing -- The parties and the arbitrator (with the assistance of the Association) may agree on a date and time for the arbitration hearing.  The arbitration hearing date shall be no later than ninety (90) calendar days after the appointment of the arbitrator by the Association.

9.   Length of Hearing -- The arbitrator shall control the duration of the arbitration hearing and shall limit the length of the arbitration hearing to two (2) 8-hour (sixteen (16) hours total), provided however that the that the arbitrator shall assure each party a minimum of up to eight (8) hours to present its case.

10.   Place of Hearing -- Unless the parties agree otherwise, or the arbitrator directs otherwise, the parties shall use the Association's office closest to where the employee's SABIC Innovative Plastics office is/was located or other mutually satisfactory location.

11.   Discovery -- Discovery is the process by which parties to a pending covered claim obtain certain non-privileged information in possession of the other party, which is relevant to the proof or defense of the covered claim, including information concerning the existence, description, nature, custody and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any such matter.  The Arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production or otherwise, as the Arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration.  Consistent with the expedited nature of arbitration, discovery is subject to certain guidelines set forth below, including requirements that (a) the parties shall begin the process of discovery after there has been either an agreement or determination by the arbitrator of the issue to be arbitrated and (b) the parties shall complete all discovery no later than fourteen (14) calendar days prior to the start of the arbitration hearing.

*Discovery Conference* --  If the parties cannot agree on reasonable discovery parameters, within 14 days of appointment, the arbitrator shall hold a discover conference for the purpose of establishing fair, reasonable and efficient discover parameters in keeping with the expedited nature of the arbitration process.  The arbitrator shall have the authority to order such discovery by way of deposition, interrogatory, document production or otherwise, as the arbitrator considers

23

necessary to a full and fair exploration of the issues in dispute, and shall give due consideration to the discovery guidelines set for the below.

*Disclosure of Witnesses and Exhibits* -- At least thirty (30) calendar days before the arbitration hearing, each party shall provide written notice to the other party of the names and addresses of any expert witnesses the party intends to call at the arbitration hearing, as well as the names and addresses of attorneys who will attend the hearing. Each party shall also communicate in writing to the other party at least fourteen (14) calendar days before the arbitration hearing the names of all witnesses other than expert witnesses that the party intends to call to testify at the arbitration hearing.

Within fourteen (14) calendar days before the arbitration hearing, each party shall give to the other, a copy of all exhibits it intends to use at the arbitration hearing.

*Obtaining Information Outside Formal Discovery Process* -- Employees and their attorneys shall restrict their discovery of Company documents, witnesses and other information to the submission of formal written requests to the RESOLVE Program Administrator (Level I, II and III). Employees and their attorneys shall first obtain the written consent of the RESOLVE Administrator before interviewing or otherwise questioning other Company employees.

*Protective Orders* -- The arbitrator may issue protective orders in response to a request by either party or by a third-party witness. Such protective orders may include, but are not limited to sealing the record of the arbitration hearing, in whole or in part, to protect the privacy, trade secrets, proprietary information, and/or other legal rights of the parties or the witnesses.

*Discovery Disputes* -- The arbitrator shall have the authority, for good cause shown by either party, to increase the number of discovery requests otherwise permitted by this procedure. In addition, the arbitrator shall decide any discovery disputes concerning depositions or the production of relevant documents and other information. Neither party shall communicate with the arbitrator unless such communication is in the presence of the other party. If either party wants to bring a discovery dispute to the arbitrator's attention, the party must arrange through the Association for a teleconference with the arbitrator and the other party.

If the arbitrator is unable to make a ruling at the end of the teleconference, the arbitrator may schedule a meeting with the parties to resolve the discovery dispute. The party seeking discovery must bring the discovery dispute to the attention of the arbitrator. The arbitrator shall make a ruling, which shall be final and binding, not later than ten (10) calendar days before the date of the arbitration hearing.

*Depositions* -- Each party may depose up to two (2) individuals for a total deposition time of not more than eight (8) hours. Individuals selected for deposition must be likely to have substantial information about the matter in question.

*Guidelines on the Obligation to Produce Documents and Respond to Interrogatories* -- Subject to the arbitrator's consideration of the guidelines below, either party may request information and/or documents from the other party necessary to establish the party's case. The parties' request must be made at least thirty (30) calendar days in advance of the arbitration hearing.

24

Neither party shall be required to provide any information to the other party in response to requests for information received less than thirty (30) calendar days before the arbitration hearing. The parties must respond to timely requests for information within fourteen (14) calendar days of the parties' receipt of such request for information. Any objections as to the extent or nature of a request must be raised with the Arbitrator by the objecting party within seven (7) days of receipt of the discovery request.

Except as may be provided under a Protective Order, neither party shall be required to provide information to the other party that is proprietary, confidential, privileged, classified, or trade secret information. In assessing any discovery dispute with respect to the burden imposed upon any party in responding to interrogatories, requests for documents or taking depositions, the arbitrator shall consider the following guidelines:

*Interrogatories* -- Each party may submit up to twenty (20) separately numbered written questions that require written answers from the other party. Subparts to questions shall count as separate questions.

*Requests for Documents* – An employee may obtain from the RESOLVE Program Administrator documents concerning his/her employment that are available to employees from their personnel files and medical files. The RESOLVE Program Administrator will make such documents available to the employee within seven (7) calendar days of receipt of the employee's written request. In addition to documents from the employee's personnel and medical files, each party may submit to the other party a written request for up to five (5) individual documents. Such documents shall be limited to documents which presently exist and do not need to be created by the producing party.

Requested documents may consist of multiple pages, but a single request for the same document, as it relates to multiple employees, is a request for multiple documents if the document exists separately for each employee. For example, a request for the most recent performance evaluations of all employees in a 25-employee work group is not a request for one document but rather is a request for twenty-five (25) documents.

12. Recording of the Arbitration Hearing -- There shall be no stenographic or electronic record of the arbitration hearing unless one or both parties request the Association to arrange for the preparation of such a record. Either party may request the Association to provide a qualified court reporter to make a stenographic record and transcript of the arbitration hearing. If only one party requests that a record be made, then that party shall pay for the entire cost of the record. If both parties want access to the record, the parties shall share the cost equally.

13. Subpoenas -- Each party may subpoena witnesses or documents for the arbitration hearing, pursuant to Section 7 of the Federal Arbitration Act; 9 U.S.C.A. Sections 1 et. seq., or the applicable state arbitration statute.

14. Evidence -- The parties may offer such evidence at the hearing as is relevant and material to a determination of a covered claim. The arbitrator shall determine the weight and relevance to be afforded the evidence offered by the parties. This procedure does not require conformity to legal rules of evidence, except for the law applicable to attorney-client privilege, attorney work product and compromise and offers to compromise. However, the arbitrator shall not receive or consider evidence by affidavit or evidence submitted to the arbitrator after the arbitration hearing unless the parties agree in writing to the receipt of such evidence.

25

15.     Briefs and Arbitrator's Opinion -- Each party will have the opportunity, if desired, to submit a written brief to the arbitrator within 30 calendar days of the close of the arbitration hearing or within 30 days of the receipt of the transcript if either party has requested a transcript.  The parties waive their right to file a brief unless they notify the arbitrator by the close of the arbitration hearing of their intention to do so.   The arbitrator shall be responsible for forwarding a copy of the opposing brief to the other party.

The arbitrator shall issue a written opinion to the parties not more than thirty (30) calendar days after the close of the arbitration hearing, or thirty (30) calendar days after the arbitrator's receipt of the parties' briefs, whichever is later.  The opinion shall be signed by the arbitrator and shall contain (a) the names of the parties and their representatives; (b) the dates and place of the hearing; (c) a summary of the covered claims arbitrated and decided; (d) the factual and legal reasons for the opinion, and (e) the damages and/or other remedies/relief, if any.

16.     Authority of the Arbitrator -- The arbitrator shall have the authority to decide discovery disputes, and for good cause shown by either party, to increase the number of witnesses and/or the number of discovery requests otherwise provided in the discovery guidelines.

The arbitrator may in connection with the covered claim of a specific employee decide whether the Company has complied with its policies, procedures, rules or practices and/or whether such policies, procedures, rules and/or practices, are in violation of applicable state or federal law and, in the case of a finding of violation, the arbitrator may, solely with respect to the claimant, order the Company to change the application of its policies, procedures, rules or practices.

However, the arbitrator shall not change, require the Company to establish, nor diminish the Company's authority to establish or revise its policies, procedures, rules and/or practices.  The arbitrator shall decide all covered claims in accordance with the substantive law of the state or the federal circuit, or both, in which the claim arose.

17.     Scope of Award -- The arbitrator shall interpret and apply the law of remedies of the state or the federal circuit, or both, in which the claim arose.  Except as provided by this procedure above (Authority of the Arbitrator) and below (Front Pay option, etc.), the arbitrator may grant any remedy or relief that would have been available had the claim been asserted in court.

18.     Front Pay Option Instead of Reinstatement -- If the arbitrator orders the reinstatement of an employee whose employment has been involuntarily terminated, there may be situations where either the employee does not want to return to work or the Company does not wish to reinstate the employee.  In such situations, the arbitrator, at the request of either party, shall issue a supplementary award.  The award will grant the employee reasonable front pay instead of reinstatement in accordance with the applicable state or federal law.

19.     Effect of Arbitrator's Decision -- By accepting an offer of employment with SABIC Innovative Plastics or GE Plastics or a transfer to SABIC Innovative Plastics or GE Plastics on or after the applicable Effective Date of this procedure (as listed above), new employees who were hired or rehired by SABIC Innovative Plastics or any General Electric Company business component on or after the applicable Effective Date of this procedure, agree as a condition of employment to waive the right to pursue covered claims in court.  They agree that an arbitrator's award shall be a final, binding and exclusive determination of their covered claims.

26

If the Company accepts a former employee's request to resolve his/her covered claims through the RESOLVE Program, the former employee agrees to waive the right to file suit in court against the Company and agrees to accept the arbitrators award as a final, binding, and exclusive determination of all covered claims.

By continuing to remain employed with or by accepting a transfer to SABIC Innovative Plastics or GE Plastics on or after the applicable Effective Date of this procedure, employees who were hired or rehired by SABIC Innovative Plastics or any GE business component before the applicable Effective Date of this procedure, agree to complete the RESOLVE Program, including arbitration, before pursuing covered claims in court for all covered claims based on events occurring on or after the applicable Effective Date.

Unless applicable law provides otherwise, the arbitrator's award will not be subject to review or appeal, except as provided by the Federal Arbitration Act, 9 U.S.C.A. Sections 1-14, or by the applicable state arbitration statute.

Neither party shall agree to publish the arbitrator's award or arrange for publication of the award. The award shall have no legal effect on the claims of employees who are not party to the arbitration or included within a class of employees covered by the arbitrator's decision. Neither party may cite the arbitrator's decision as precedent in any other arbitration, or in any administrative or court proceedings. However, either party may cite the decision to appeal the arbitrator's decision and/or to seek dismissal of the same claims in litigation.

20. Costs and Fees -- The Company will pay (1) the Association's filing and other administrative fees; (2) the arbitrator's fee and reasonable travel and living expenses; (3) the expenses of any fact witnesses and the costs of any proofs or expert advice provided they are produced solely at the direct request of the arbitrator; (4)  the cost of renting an arbitration hearing room; and (5) the employee's salary, if still employed by the Company, for the time spent at the arbitration hearing.

The Company shall pay the fees and expenses of the arbitrator by making such payments directly to the Association. The Association shall then pay the arbitrator without disclosing the source of such payments. To avoid disclosing to the arbitrator the source of the payment of his/her fees and expenses or other costs of arbitration, all references to the "costs and fees" of the RESOLVE Program shall be removed from copies of this procedure which are provided to the arbitrator.

Each party shall pay its experts' and/or attorneys' fees unless the arbitrator awards reasonable experts' and/or attorneys' fees to the employee as a "prevailing party" under applicable law. However, a current employee shall not be entitled to an arbitrator's award of such fees unless the employee agree to accept the arbitrator's decision as the final, binding and exclusive determination of the employee's claims.

The Company shall pay the reasonable experts' and attorney's fees awarded to a current employee as a "prevailing party" by the arbitrator, even if the Company does not accept the arbitrator's decision as the final, binding and exclusive determination of the employee's claims.

21. Settlement Agreement and Release -- If the parties reach an agreement to resolve the employee's claims prior to the issuance of the arbitrator's decision, or

27

after the issuance of an arbitrator's non-binding decision with respect to the covered claims of a current employee, the parties will, within thirty (30) calendar days of such agreement, enter into a signed settlement agreement and release of all claims against the Company and its representatives related to the employee's employment.

IV.   **FOCAL POINTS**

The RESOLVE Program Administrator:  Elaine Thorne  (Dial comm 8*838-4878) (fax 8*838-6543)

**Appendix Information**

Appendix A-1 through A-4 :  Employee Problem Resolution Program Submission Forms (includes forms for Levels I through IV)
Appendix B - National Rules for the Resolution of Employment Disputes
Appendix C - American Arbitration Association Submission to Mediation
Appendix D - Mediation Confidentiality Agreement
Appendix E - American Arbitration Association Submission to Arbitration

28

SAB

**RESOLVE Program**
**Formal Process Level I - Submission Form**

| Name: | | Phone Number: |
|---|---|---|
| Job Title: | Location/Address: | HR Representative's Name: |
| Manager/Team Leader's Name: | Organization: | Department / Team: |

| Have you previously discussed this concern/claim with your Manager / Leader? |
|---|
| YES  ☐                              NO  ☐ |

| **LEVEL I** | FIRST DATE OF YOUR CONCERN(S)/CLAIM(S): |
|---|---|

| Provide a detailed explanation of your concern(s)/claim(s), individuals involved, and what you believe is necessary to resolve the concern(s).  Please print or type. |
|---|
|  |

| I request to skip Level I and submit concern(s)/claim(s) initially at Level II |
|---|
| (must still enter description above and indicate reasons for request to skip Level I):  YES     ☐ |
|                                                                                          NO      ☐ |

| At the request of the employee or the Manager / Leader, an HR representative may participate in the Level I meeting. |
|---|
| Do you request the attendance of the HR representative/manager at the Level I meeting? |
| YES  ☐ |

| Employee Signature:                                              Date: |
|---|

Forward this form to the RESOLVE Program Administrator, Elaine Thorne (phone (413) 448-4878 or dial comm 8*838-4878 fax: dial comm 8*838-6543) and site Human Resources Manager.

Appendix A-1

29

**RESOLVE Program**
**Formal Process Level II - Submission Form**

| Name: | | Phone Number: |
|---|---|---|
| Job Title/Level: | Location/Address: | HR Representative/s Name: |
| Manager / Leader's Name: | Organization: | Department / Team: |

**LEVEL II: SELECT ONE OPTION:**      ___OPTION 1 **– HIGHER LEVEL MANAGEMENT REVIEW**
                                                           ___OPTION 2 – PEER REVIEW PANEL (ONLY IF SITE HAS WRITTEN PROCESS)

| *Must submit concern(s)/claim(s) at Level II within 14 calendar days of the date of the Manager / Leader's written response at Level I.*<br>Provide any additional information regarding your concern(s)/claim(s) including information that conflicts with the Manager / Leader's stated reason for not resolving  your concern(s)/claim(s) at Level I.  Please print or type. |
|---|
| |

| Employee Signature: | Date: |
|---|---|

Forward this form to the RESOLVE Program Administrator,  Elaine Thorne (phone (413) 448-4878 or dial comm 8*838-4878 fax: dial comm 8*838-6543) and site Human Resources Manager.
Appendix A-2

30

**RESOLVE Program**
**Formal Process Level III - Mediation**
**Submission Form**

| Name: | | Phone Number: |
|---|---|---|
| Job Title/Level: | Location/Address: | HR Representative's Name: |
| Manager / Leader's Name: | Organization: | Department / Team: |

**LEVEL III - MEDIATION**

| |
|---|
| ***Must submit covered claim(s) at Level III within 30 calendar days of the date of the Company's written response at Level II.*** <br> Include all legal claim(s) that arise out of the same facts and include all facts that support your legal claim(s), including facts which conflict with the Company's stated reasons for denying your concern(s)/claim(s) at Level II.  Include the dates of each alleged legal violation, names of individual(s) who have knowledge about each alleged legal violation and the nature of their involvement, and any documents or other evidence which support your claim(s).  Please print or type. |
| Employee Signature:                                                                          Date: |

Forward this form to the RESOLVE Program Administrator, Elaine Thorne (phone (413) 448-4878
or dial comm 8*838-4878 fax: dial comm 8*838-6543) and site Human Resources Manager.
Appendix A-3

31

**RESOLVE Program**
**Formal Process Level IV - Arbitration**
**Submission Form**

| Name: | | Phone Number: |
|---|---|---|
| Job Title/Level: | Location/Address: | HR Representative's Name: |
| Manager / Leader's Name: | Organization: | Department / Team: |

LEVEL IV - ARBITRATION

| |
|---|
| ***Must submit covered claim(s) at Level IV within 30 calendar days of the date of the Company's written response at Level III.***<br><br>Include any additional information regarding your claim(s) including information which conflicts with the Company's stated reason for denying your claim(s) at Level III.  Please print or type. |
| Employee Signature:                                                                 Date: |

Forward this form to the RESOLVE Program Administrator,  Elaine Thorne (phone (413) 448-4878
or dial comm 8*838-4878 fax: dial comm 8*838-6543) and site Human Resources Manager.

Appendix A-4

32

**American Arbitration Association**

National Rules for the Resolution of Employment Disputes
**(Including Mediation Rules)**

***The American Arbitration Association (Association) is a public-service, not-for-profit organization offering a broad range of dispute resolution services through offices located in major cities throughout the United States.  In addition, through its headquarters in New York, the Association provides consulting services, education and training, specialized publications, and research on all forms of dispute settlement.***

To obtain a copy of the rules, contact:

American Arbitration Association
133 Federal Street
Boston, Massachusetts  02110-1703

Phone:   (617) 451-6600
fax:        (617) 451-0763

Resolve Program Administrator
Elaine Thorne
Phone:   (413) 448-4878
              8*838-4878
Fax:       8*838-6543

Appendix B

33

**American Arbitration Association**
**Submission to Mediation**

Date:  _____

      The named Parties hereby submit the dispute below to mediation under the National Rules for the Resolution of Employment Disputes of the American Arbitration Association and SABIC Innovative Plastics "Resolve."
      Description of legal claim(s):  (Please note:  This description should be a brief but complete description of the nature of the legal claim(s) to be mediated.  This includes, but is not limited to, monetary amounts requested by each party, requests for specific performance, etc.  If the parties have undergone settlement discussions in relation to this matter, please describe briefly.  Please feel free to attach additional pages if necessary.)

Place of mediation:  _____

| | |
|---|---|
| Name of Party_____ | Name of Party_____ |
| Address_____ | Address_____ |
| City/State_____ | City/State_____ |
| Phone Number_____ | Phone Number_____ |
| Name of Attorney_____ | Name of Attorney_____ |
| Firm_____ | Firm_____ |
| Address_____ | Address_____ |
| City/State_____ | City/State_____ |
| Phone Number_____ | Phone Number_____ |
| Fax Number_____ | Fax Number_____ |
| Signed By_____ | Signed By_____ |
| Please print name beneath signature | Please print name beneath signature |

**Appendix C**

34

## MEDIATION CONFIDENTIALITY AGREEMENT

In order to promote communication among the parties and the mediator and to facilitate settlement of the dispute, all parties agree that the mediator has no liability for any act or omission in connection with the mediation and further agree as follows:

The mediator is a neutral intermediary who may not act as an advocate for any party.

All statements made during the course of the mediation are privileged settlement discussions, are made without prejudice to any party's legal position and are non-discoverable and inadmissible for any purpose in any legal proceeding.

The privileged character of any information is not altered by disclosure to the mediator. Disclosure of any records, reports or other documents received or prepared by the mediator cannot be compelled.  The mediator shall not be compelled to disclose or to testify in any proceeding as to (1) any records, reports or other documents received or prepared by the mediator or (2) information disclosed or representations made in the course of the mediation or otherwise communicated to the mediator in confidence.

No aspect of the mediation shall be relied upon or introduced as evidence in any arbitral, judicial or other proceeding, including but not limited to:

   (a) Views expressed or suggestions made by a party with respect to a possible settlement of the dispute;
   (b) Admissions made in the course of the mediation proceedings; and
   (c) Proposals made or views expressed by the mediator or the response of any party thereto.

The parties agree that breach of this Agreement would cause irreparable injury and that monetary damages would be an inadequate remedy since the parties are relying upon this Agreement in confidentiality in disclosing sensitive business and/or personal information.  The parties therefore agree and stipulate that any party to this Agreement may obtain an injunction to prevent disclosure of any such confidential information in violation of this Agreement.

Any party breaching this Agreement shall be liable for and shall indemnify the non-breaching parties and the mediator for all costs, expenses, liabilities and fees, including attorneys' fees which may be incurred as a result of such breach.

Dated _____, 19_____, and signed before commencement of the mediation by each of the persons whose signatures appear below.

_____
_
                                        Mediator

        Employee:                                    Company:

_____      _____


**Appendix D**

35

**American Arbitration Association**
**Submission to Arbitration**

Date: _____

     The named Parties hereby submit the dispute below to arbitration under the National Rules for the Resolution of Employment Disputes of the American Arbitration Association and SABIC Innovative Plastics "Resolve" Policy.

     Description of legal claim(s):  (Please note:  This description should be a brief but complete description of the nature of the legal claim(s) to be arbitrated.  This includes, but is not limited to, monetary amounts requested by each party, requests for specific performance, etc.  If the parties have undergone settlement discussions in relation to this matter, please describe briefly.  Please feel free to attach additional pages if necessary.)

Place of arbitration: _____

| | |
|---|---|
| Name of Party_____ | Name of Party_____ |
| Address_____ | Address_____ |
| City/State_____ | City/State_____ |
| Phone Number_____ | Phone Number_____ |
| Name of Attorney_____ | Name of Attorney_____ |
| Firm_____ | Firm_____ |
| Address_____ | Address_____ |
| City/State_____ | City/State_____ |
| Phone Number_____ | Phone Number_____ |
| Fax Number_____ | Fax Number_____ |
| Signed By_____ | Signed By_____ |
| | |
| Please print name beneath signature | Please print name beneath signature |

**Appendix E**